UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>           Plaintiff,<br><br>v.<br><br>TODD ZINKWICH,<br><br>           Defendant. | Civil Action No. 1:20-cv-11746<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges the following against Defendant Todd Zinkwich.

## SUMMARY

1. This is a securities fraud enforcement action. Beginning in or before June 2017 and continuing through at least March 2018 (the "Relevant Period"), Defendant worked with others to manipulate the public market for numerous microcap stocks, misleading the public to believe there was heightened demand for the stock of certain companies. Defendant's clients were individuals and groups who controlled large quantities of stock that they hoped to dump into the public market. They paid Defendant to generate interest and price movement in the stocks they controlled, which in turn paved the way for these clients to sell millions of dollars' worth of stock to the public at inflated prices.

2. Defendant, using two now-defunct entities that he controlled, handled arrangements with clients and received payments from them. In turn, Defendant arranged with an associate, Eric Landis, to create the mirage of heightened demand for the stocks in question. Landis did this by repeatedly buying and selling stocks between several accounts that he and

Defendant controlled. In this way Defendant and Landis made it appear that thousands of shares were changing hands in the public markets when in fact Landis was simply trading with himself. Over the course of the fraud, Landis placed thousands of manipulative trades in the various stocks Defendant agreed to promote.

3. Defendant used Green Rock Enterprises Inc. to receive hundreds of thousands of dollars from clients who hired him and Landis to promote stocks of the companies used in the clients' schemes. Defendant communicated to the clients that Landis would send promotional materials to email lists with thousands of subscribers that Landis purportedly controlled.

4. In fact, the email "lists" that Landis maintained were not large enough to generate significant market activity simply by sending out promotional materials. Indeed, Landis did not send promotional emails to nearly the number of subscribers he told the clients he was reaching. And, in some instances, he did not send any emails at all. Instead, Landis placed thousands of manipulative trades in the securities of the companies he and Defendant had been paid to promote, thereby creating the appearance of an upsurge of trading in the companies' stock. Defendant facilitated Landis's trading by paying him a cut of the money from the clients and by allowing Landis access to brokerage accounts in the name of Clear Island Holdings Inc., an entity that Defendant controlled.

5. By reason of the conduct alleged herein, Defendant violated, and unless restrained and enjoined will continue to violate the antifraud provisions of the securities laws, Sections 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act"), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b-5(a) and (c) thereunder. Defendant also aided and abetted Landis's violations of the market manipulation provisions of the securities laws, Section 9(a) of the Exchange Act.

6.     The Commission seeks a permanent injunction enjoining Defendant from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful conduct together with prejudgment interest, civil penalties, an order prohibiting Defendant from participating in any offering of a penny stock, and such other relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

8.     Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions and courses of business alleged in this Complaint occurred within the District of Massachusetts, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails. Among other things, various of the stocks affected by Defendant's scheme were offered and sold to investors located in Massachusetts.

## DEFENDANT AND RELATED ENTITIES

9.     Defendant Todd Zinkwich, age 50, is a resident of Clearwater Beach, Florida. Defendant was the sole owner of Green Rock Enterprises Inc. and Clear Island Holdings Inc., both Florida corporations. The Florida secretary of state administratively dissolved Green Rock and Clear Island in 2017 for failure to file required annual reports.

**RELATED PERSON AND ENTITY**

10. Eric T. Landis, age 54, is a resident of Charlottesville, Virginia. In November 2018, the Commission charged Landis and a Virginia corporation he controlled, Ridgeview Capital Management LLC, for their roles in the conduct summarized in this complaint, and the U.S. Attorney for the District of Massachusetts charged Landis in a parallel criminal action.

11. The Commission's action against Landis alleged that from at least January 2015 through January 2018, Landis placed thousands of manipulative trades in over 90 microcap companies, including about 1,300 wash trades between multiple accounts in the names of Landis, Landis's relative, Ridgeview, and Clear Island. On August 8, 2019, the court entered a judgment against Landis and Ridgeview in the Commission's action, ordering permanent injunctive relief, penny stock bars, and injunctions prohibiting them from trading or promoting certain stocks. Monetary relief remains pending in the civil action.

12. Landis pled guilty in the criminal action in January 2019, and the court sentenced him on January 24, 2020, to six months in prison, two years of supervised release, and a $50,000 fine. On August 10, 2020, the court entered an order of forfeiture against Landis in the amount of $2,505,488.

**FACTS**

13. "Wash" or "match" trading is a particular form of manipulative trading, where one person trades between the same or multiple accounts that the person controls or has access to. In reality, the same person is placing the buy and sell orders through multiple accounts, and when those orders execute against each other, it is really the same person on both the buy and sell side of the transaction. In this form of manipulative trading, the trader effectively trades with him or herself and creates a false appearance of active trading in a company's stock, commonly

raising or depressing the price of the stock, all for the purpose of inducing others to buy the stock in future transactions.

14. Fraud schemes effectuated through manipulative trading often involve small (i.e., "microcap") companies, particularly companies whose stocks trade infrequently. When microcap companies are used in such schemes, the small market for their stock makes it possible to manipulate reported transactions and prices, thereby creating an appearance of increased demand. With thinly traded microcap stocks, it is often the case that, when manipulations stop, market demand for the stocks returns to pre-manipulation levels. That is, there is often little to no trading at all; the stock becomes worthless; and retail investors who purchased during the manipulation are left holding stock that they cannot sell and that is essentially worth nothing.

15. During the Relevant Period, clients holding large quantities of stock that they hoped to dump into the retail market hired Defendant to generate public interest in various companies whose stock the clients hoped to sell. In turn, Defendant delivered on his promise of an appearance of increased interest in the stocks by paying Landis, who in turn made thousands of wash trades in the stock of the companies.

16. Defendant knew, or was reckless in not knowing, that many or all of his clients routinely violated various securities laws, including by pumping up demand, or paying others to pump up demand, in a company's stock prior to dumping their shares. Defendant intentionally avoided learning the details of his clients' activities, keeping himself willfully blind to the illegality of their conduct. Defendant routinely minimized his knowledge by communicating with the clients only about the stock symbol they wanted Defendant to promote.

17. Defendant, likewise, intentionally avoided learning the precise details of Landis's manipulative trading. Defendant well understood, however, that he and Landis were paid to

generate an appearance of increased trading volume in the clients' chosen stocks. And Defendant knew that Landis generated such market movement by deceiving public investors through his wash trading.

18. Landis purported to be self-employed as a stock promoter. To facilitate this image, Landis established, paid for, and controlled email distribution lists designed to tout the stock of publicly traded companies, including The Street Alert, The Penny Reporter, and The Stock Beacon. Defendant incorporated Florida companies with the names The Street Alert LLC and ThePennyReporter.com LLC, but he did not actively conduct business under those names.

19. Defendant knew, or was reckless in not knowing, that Landis's mailing lists were insufficient to generate the kind of impact on stock price and volume that Defendant and Landis promised to deliver for the clients who engaged their services. Landis did not send promotional emails to nearly the number of subscribers he communicated to the clients that he would. And, in some instances, Landis did not send any emails at all. Instead of relying on promotional campaigns, Defendant paid Landis and provided him access to Clear Island's brokerage accounts. Landis, in turn, used Clear Island's accounts, among others, to place thousands of wash trades, thereby creating an appearance of increased public trading in the stocks Defendant and Landis had been paid to "promote."

20. One example of the fraud occurred in June 2017, when clients paid Defendant and Landis to promote the securities of BioHemp International Inc. and other microcap companies they controlled.

21. On June 23, 2017, the clients wired Green Rock $104,000. The same day, Defendant, through Green Rock, paid $46,000 to Landis's Ridgeview entity.

22. Also on June 23, 2017, Defendant wired $35,000 from Green Rock to Clear Island. And a few days later, Defendant wired approximately $35,000 from the Clear Island bank account to one of its brokerage accounts.

23. Defendant made the transfers from Green Rock to Clear Island at Landis's direction. Landis told Defendant that Landis needed the money to conduct trading in the Clear Island brokerage accounts. Defendant intended that Landis would use the money to make trades and generate an appearance of market interest in the stocks the clients were paying them to promote.

24. Between June 27, 2017, and June 30, 2017, Landis used multiple accounts to make manipulative trades in BioHemp, buying and selling over 230,000 shares between accounts Landis controlled. Included among Landis's manipulative trades in BioHemp on June 28, 2017, were purchases and sales of 14,000 shares between Clear Island and accounts in the name of Ridgeview and Landis's relative.

25. Another example of the fraud occurred in September and October 2017, when clients paid Defendant and Landis to promote Drone Guarder Inc. and other microcap companies.

26. On September 18, 2017, the clients wired Green Rock $69,990. The next day Defendant wrote a check to Landis's Ridgeview entity for $29,500.

27. Between September 20, 2017, and October 24, 2017, Landis used multiple accounts to make manipulative trades in Drone Guarder. Included among Landis's manipulative trades in Drone Guarder were 61 wash trades of over 500,000 shares between Clear Island accounts and accounts in the name of Ridgeview, Landis, and Landis's relative.

\* \* \*

28. In aggregate, from June 2017 to March 2018, Defendant, through Green Rock, received $759,890 from clients operating fraudulent schemes.

29. Out of the nearly $760,000 that Green Rock received from Defendant's clients, Defendant paid $324,000 to Landis through Ridgeview, approximately $100,000 to other individuals connected to the clients, and $64,000 to Clear Island for Landis to use to buy stocks as part of the scheme. Defendant kept approximately $272,000 for himself.

30. By reason of the conduct described herein, Defendant defrauded investors in multiple publicly traded companies by helping to create the false appearance of increased market activity in the securities of those companies. Defendant's and Landis's conduct created apparent trading activity in the stock of those companies for the purpose of inducing retail investors to purchase stock of those companies at inflated prices.

## FIRST CLAIM FOR RELIEF

**FRAUD IN THE OFFER OR SALE OF SECURITIES**
**(Violations of Sections 17(a)(1) and (3) of the Securities Act)**

31. The Commission repeats and incorporates by reference the allegations in paragraphs 1-30 above.

32. By reason of the conduct described above, Defendant, in the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, acting with the requisite degree of knowledge or state of mind (i) employed devices, schemes, or artifices to defraud; and (ii) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

33. By reason of the conduct described above, Defendant violated Securities Act Sections 17(a)(1) and (3) [15 U.S.C. § 77q(a)(1) and (3)].

## SECOND CLAIM FOR RELIEF

### FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES
(Violations of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder)

34. The Commission repeats and incorporates by reference the allegations in paragraphs 1-33 above.

35. By reason of the conduct described above, Defendant, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, intentionally, knowingly, or recklessly, (i) employed devices, schemes, or artifices to defraud; and (ii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

36. By reason of the conduct described above, Defendant violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c)] thereunder.

## THIRD CLAIM FOR RELIEF

### AIDING AND ABETTING
(Violations of Section 20(e) of the Exchange Act)

37. The Commission repeats and incorporates by reference the allegations in paragraphs 1-36 above.

38. Sections 9(a)(1) and (2) of the Exchange Act [15 U.S.C. §78i(a)(1)-(2)] make it unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, (1) to effect any transaction in a security which involves no change in the beneficial ownership of the security and to enter substantially similar orders for the purchase and sale of any security

for the purpose of creating a false or misleading appearance of active trading in the security; or (2) to effect a series of transactions in a security creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others.

39. By engaging in the conduct described above, Landis violated Sections 9(a)(1) and (2) of the Exchange Act [15 U.S.C. § 78i(a)(1) and (2)].

40. Defendant knowingly or recklessly provided substantial assistance to Landis in his violations of Sections 9(a)(1) and (2) of the Exchange Act.

41. By reason of this conduct, Defendant violated Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A. Enter a permanent injunction restraining Defendant and each of his officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, including email, fax, or overnight delivery service, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of:

1. Section 9(a) of the Exchange Act [15 U.S.C. 78i(a)];
2. Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5]; and
3. Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

B. Order the Defendant be unconditionally and permanently prohibited from participating in any offering of a penny stock, as authorized by Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and Section 21d(6)(B) of the Exchange Act [15 U.S.C. § 78u(d)(6)(B)];

C. Order the Defendant to disgorge his ill-gotten gains, plus prejudgment interest;

D.  Order the Defendant to pay appropriate civil monetary penalties in accordance with Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

E.  Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

F.  Grant such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

The Commission demands a jury in this matter for all claims so triable.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

By its attorneys,

/s/ Jonathan R. Allen
Eric A. Forni (Mass. Bar No. 669685)
Kathleen B. Shields (Mass Bar No. 637438)
Jonathan Allen (Mass Bar No. 680729)
Amy Gwiazda (Mass Bar No.663494)
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA  02110
Phone:  (617) 573-4563 (Allen direct)
Fax:     (617) 573-4590
allenjon@sec.gov

Dated:  September 24, 2020